UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61049-CIV-GOLD/DUBÉ

**CONSENT CASE**

BRUCE BERTASH,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Defendant (D.E. #15) and the Motion for Summary Judgment filed by the Plaintiff (D.E. #16) pursuant to the consent of the parties and an Order of Reference entered by the Honorable Alan S. Gold, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff Bruce Bertash (hereinafter "Bertash" or "Plaintiff").

### I. FACTS

Bertash filed an application for Disability Insurance Benefits on July 6, 2001 asserting that he has been disabled and unable to work since September 1, 1996. (R. 56-58).[1] The application was denied initially (R. 30, 45-47) and on reconsideration. (R. 35-49-51). Following a hearing (R. 604-621), the ALJ issued a decision denying the request for benefits. (R. 17-25). A request for review

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

filed with the Appeals Council was denied. (R. 11-14).

The Plaintiff, age 61 at the time of the hearing on July 12, 2004, testified that he was born on May 15, 1943 in Chicago; that he was single; and that he lived with his 90 year old mother. (R. 606-607). The Plaintiff also testified that he was 5'6.5" and weighed between 133 and 135 lbs. According to Bertash, he owns a car and has a driver's license, but his brother-in-law drove him to the hearing. (R. 607). Bertash stated that he drove to the grocery store several days prior to the hearing and that he usually drives three or four times a week to run errands. (R. 608).

The Plaintiff stated that he completed high school and that he last worked in 1996 as a security officer guarding an apartment complex for 6 weeks. (R. 608-609). Bertash also stated that he and a friend opened an Italian restaurant in February 1996 which closed in August 1997. (R. 609). According to the Plaintiff, he and his partner decided to close the business because the restaurant wasn't making any money. The Plaintiff stated that at the time he owned the restaurant he wasn't feeling good and that his role was as owner and he just "came to check out things." (R. 610).

Bertash stated that prior to working as a security guard, he worked for two or three cities performing ground maintenance. He added that he worked doing ground maintenance for five years until 1991 or 1992. (R. 611). According to the Plaintiff, he suffers from chronic obstructive pulmonary disease which has required him to go to the emergency room. His last emergency room visits were one month prior to the hearing and 5-6 months prior to that. Both times he stayed in the hospital overnight. (R. 612).

Additionally, the Plaintiff stated that he has Hepatitis C and that he was operated on for an ulcer in 1984. Bertash claimed that as a result of the Hepatitis C, he cannot sit or stand for too long. The Plaintiff also stated that for the past year, his shoulder has bothered him and he gets arthritic pain

as a result. The Plaintiff testified that he gets panic attacks once every two weeks and that he is seeing a psychiatrist. (R. 613). The Plaintiff stated he has been seeing the psychiatrist for a year and a half and seeing him helps. (R. 614).

According to Bertash, he can walk one half to three quarters of a block without getting shortness of breath; can stand for a half hour to forty five minutes; cannot bend or kneel very well; can sit for two to three hours; and is able to move his fingers. (R. 614-615). The Plaintiff added that he cannot lift over 35 pounds. Bertash stated that he doesn't have hobbies aside from coin collecting; does not do social activities or belong to organizations; does not go to church aside from on Christmas or holidays; does not drink or smoke; and has a "so-so" appetite. (R. 615).

The Plaintiff stated that he can dress himself and that he helps his mother around the house by cooking and vacuuming a "little bit." He added that his day consists of trying to clean his room, straightening out the beds, taking care of the cats, running errands for his mother, and taking his mother to the chiropractor three times a week. (R. 616). The Plaintiff explained when he had testified earlier he did not feel well at the time he owned the restaurant it was because he was having asthma attacks at that time. (R. 617). Bertash stated he would get an asthma attack every four or five days and as a result missed work about once a week but it "lessened after [he] started taking steroids." (R. 618).

According to the Plaintiff, he has been using a nebulizer twice a day for the past two and a half years, and uses an inhaler every six hours. (R. 619). Bertash stated that when he owned the restaurant, the change in temperature from the heat in the kitchen to the cold in the dinning area is what triggered his asthma attacks. The Plaintiff explained that after an attack he feels very nauseous, dizzy, his nose closes up and his chest becomes tight. The Plaintiff stated in addition to his asthma

attacks, he gets shortness of breath when he walks. The Plaintiff testified that as a result of having Hepatitis C, he has problems with concentration. (R. 620). Bertash added that the nebulizer and inhaler help him on a temporary basis. (R. 621).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. A review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment show that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

On September 16, 2004, the ALJ issued a decision finding that the Plaintiff's impairments of asthma, Hepatitis C and anxiety disorder were severe but did not meet or equal the severity in the listing of impairments. The ALJ also found the Plaintiff's allegations concerning his limitations were not totally credible. According to the ALJ, the Plaintiff retained the residual functional capacity for a full range of light work. Based on these findings, the ALJ concluded that the Plaintiff could perform his past relevant work as a security guard and was not disabled. (R. 25).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920(a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the

ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520 (c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the opinion of Dr. Ginnis, the Plaintiff's treating physician, did not support the ALJ's decision that the Plaintiff could perform a full range of light work.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

With regard to the opinion of Dr. Ginnis the ALJ stated as follows:

> The Administrative Law Judge gave considerable weight to the reports by treating physician, Dr. Ginnis, the claimant's treating physician, which show that the claimant was diagnosed with bronchial asthma on July 20, 1998 and treated with Prednisone (Exhibit 2F, p. 152). Dr. Ginnis's records show that the claimant was treated regularly for his asthma that it was controlled with the prescribed medications (Exhibit 2F).

(R. 23). The Plaintiff contends that contrary to the ALJ's finding, Dr. Ginnis repeatedly found that the Plaintiff was disabled prior to his date of last insured. Specifically, the Plaintiff references two letters drafted by Dr. Ginnis. The first, was sent of August 3, 2001 and stated that the Plaintiff had been under the care of Dr. Ginnis for over five years. It further, stated that in the opinion of Dr. Ginnis the Plaintiff has suffered from asthmatic bronchitis and exacerbations of COPD and that the Plaintiff, "at present... is unable to participate in work related activities." The prognosis to return to any form of productive work was viewed as guarded. (R. 217).

A second letter from Dr. Ginnis dated July 31, 2002, stated the Plaintiff had been under his treatment for recurrent attacks of asthmatic bronclutes on a background condition of Chronic Obstructive Pulmonary Disease. Dr. Ginnis opined that the Plaintiff was currently "totally disabled"

and had been so before March 1, 2001. (R. 186).

Although in his opinion the ALJ gave considerable weight to the opinion of Dr. Ginnis, the two letters stating that the Plaintiff was totally disabled and could not work are not mentioned in the opinion and the ALJ did not provide a reason for rejecting same. As such, remand is required so that the opinion and records of the Plaintiff's treating physician could be properly evaluated.

The Plaintiff next contends that remand is necessary as the ALJ erred by failing to consider post hearing evidence. Specifically, a sworn statement by Dr. Ginnis which stated that the Plaintiff was disabled prior to the disability onset date. (R. 589-600). In the sworn statement, Dr. Ginnis stated that he had seen the Plaintiff at least once a month since 1998. (R. 592). Dr. Ginnis also opined that the Plaintiff would probably not be able to perform "light work." (R. 596-597). Additionally, Dr. Ginnis stated that the Plaintiff's prognosis regarding his ability to work was "extremely guarded." (R. 599).

When the Appeals Council has denied review, only evidence presented to the ALJ will be considered when determining whether the ALJ's decision is supported by substantial evidence. <u>Falge v. Apfel</u>, 150 F. 3d 1320, 1323 (11th Cir. 1998). However, the Plaintiff can still succeed on his argument that remand is proper, if he can prove that the new evidence was submitted to the Appeals Council and the Appeals Council refused to consider the new evidence and denied review. The decision [the denial of review] is... subject to judicial review because it amounts to an error of law. <u>Falge</u>, at 1324. Although the Appeals Council in the instant case denied the Plaintiff's claim for review, it specifically indicated that the post hearing evidence submitted by the Plaintiff was considered when making its determination. (R. 7-8).

The other course for the Plaintiff to prove that remand is proper requires the Plaintiff to

prove: (1) ... new, non-cumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level. Falge, at 1323. Additionally, SSR 96-5p states in part:

> However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.
>
> In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527 (d) and 416.927 (d). For example, it would be appropriate to consider the supportability of the opinion and its consistency with the record as a whole at the administrative law judge and Appeals Council levels in evaluating an opinion about the claimant's ability to function which is from a State agency medical or psychological consultant who has based the opinion on the entire record (see Findings of State Agency Medical and Psychological Consultants, below). However, pursuant to paragraph (e)(2) of 20 CFR 404.1527 and 416.927, the adjudicator is precluded from giving special significance to the source; e.g., giving a treating source's opinion controlling weight, when weighing these opinions on issues reserved to the Commission.

Despite the new evidence being submitted to the Appeals Council, review was denied and it does not appear from the notice submitted by the Appeals Council that the sworn statement was properly considered. As such, the Court finds that remand is warranted for the specific purpose of the ALJ evaluating Dr. Ginnis's sworn statements.

The Court's findings above directly impact the Plaintiff's final point of contention that the

9

ALJ's credibility analysis was not supported by substantial evidence. As such, the Court will not address same.

While error is present, this Court cannot find on the record that an award of benefits to the Plaintiff is required at this time. Accordingly, this Court finds that the decision by the ALJ is **REVERSED** and this cause **REMANDED** for further proceedings consistent with this Report and Recommendation.

### III. CONCLUSION

Based on the foregoing, this Court finds that the decision by the ALJ is not supported by substantial evidence and that the correct legal standards were not applied. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1) The Motion for Summary Judgment filed by the Plaintiff (D.E. #16) is **GRANTED in part**.

(2) The Motion for Summary Judgment filed by the Defendant (D.E. #15) is **DENIED**.

(3) The decision of the Commissioner is **REVERSED** and this cause is hereby **REMANDED** for further proceedings consistent with this Order.

(4) Any pending motions are deemed **MOOT** and this case is hereby **CLOSED**.

**DONE AND ORDERED** this **21** day of October, 2008.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE